[No. 9749.   Department One.   October 28, 1911.]

L. N. Rosenbaum, *Respondent*, v. Syverson Lumber &

Shingle Company, *Appellant.*[1]

Attorney and Client—Principal and Agent—Contract for Employment—Performance — Rescission.   Where plaintiff, as lawyer and financial agent, entered into a written agreement to negotiate a sale of bonds for a specified remuneration, to prepare certain papers in respect thereto for $200, and for $50 to go to Portland to arrange a temporary loan, and after accepting the $50, did not go to Portland or attempt to arrange the temporary loan, but tried to deceive the defendant, the defendant had a right to rescind the contract before any further performance by the plaintiff, and plaintiff could claim no rights thereunder and was liable for the $50 received.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered April 13, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract.   Reversed.

*John C. Hogan*, for appellant.

*T. H. McKay*, for respondent.

Mount, J.—The plaintiff held himself out as a lawyer and financial agent.   The defendant, desiring to borrow $50,000, secured by mortgage bonds upon its property, went to the plaintiff's office in Seattle, and was informed by the plaintiff that the loan could be secured by him, and thereupon the following written contract was entered into:

"May 17th, 1910.

"L. N. Rosenbaum:   I hereby agree to sell through you, to whatever parties you name, $50,000 first mortgage 5 per cent gold bonds of the Syverson Lumber & Shingle Company of Montesano, Washington; said bonds to bear 5 per cent interest, semi-annually.   All bonds redeemable at our option any time after two years from date thereof at 101

[1]Reported in 118 Pac. 625.

and accrued interest, but $5,000 of said bonds shall be redeemed by us each year at par, beginning two years after date of said bonds, bonds to be in $100 or $500 or $1,000 denominations. We will sell these bonds at 95, we to pay you 1 per cent commission ($500) for making said sale, payable to you when the bonds are sold and paid for to us. We hereby certify the correctness of the attached statement of assets and liabilities dated May 1st, 1910, of our company, the trustees for said bonds to be satisfactory to you or buyers of said bonds, we to carry $40,000 fire insurance on said property to protect said bonds. We hereby authorize and instruct you to prepare the deed of trust, resolutions, form of coupon and bonds for the bond issue, for which we will pay you, when completed, an attorney's fee of $200 cash, we to pay the trustees and for the printing of the bonds, but to have no other expense of any kind in connection with this matter other than stated herein. We pay you herewith $50 fee to go to Portland, Oregon, immediately to negotiate a temporary ninety-day loan of $10,000 on these bonds. We warrant all our statements herein and attached hereto to be true and correct, and that our titles to realty are good and marketable, and that there are no liens or incumbrances of any kind on or against said property to be covered by said bonds.          Syverson Lumber & Shingle Company,
"H. Syverson, Manager."

When this contract was entered into, the defendant paid the $50 to the plaintiff for the purpose stated. The plaintiff agreed to go to Portland, Oregon, that evening on the four o'clock train. He did not go and made no effort to obtain the temporary loan. He thereafter falsely endeavored to lead the defendant to believe that he had gone to Portland, and that negotiations were pending for the temporary loan. Mr. Syverson, the manager of the defendant company, soon learned of this deceit, and confronted the plaintiff with the fact, and demanded a return of the $50 and a rescission of the contract. Plaintiff refused to refund the $50. The plaintiff wrote some letters to eastern bonding companies in regard to the proposed bond issue, but did not secure the sale of the bonds. He made no effort to secure the temporary

loan, and after he had been notified of the rescission of the contract, he prepared a blank deed of trust and form of resolutions and mailed the same to the defendant company, and then made a demand for $200, the fee provided in the contract, which the defendant refused to pay. Plaintiff thereupon brought this action to recover $700 upon the contract. The case was tried to the court without a jury. The trial court was of the opinion that the contract was a divisible contract, and that the plaintiff had earned his $200 attorney fee by preparing the form of deed of trust and resolutions, and entered a judgment for $200, less the $50 which had already been paid as above stated.

If the contract or any part of it had been performed in good faith by the plaintiff, it might have been held to be divisible in the sense that the plaintiff would have been entitled to $500 for the sale of the bonds, and $200 for attorney's fees for preparing certain papers, and $50 for his expenses to Portland. But he did not perform the contract in good faith or at all. He took the $50 for expenses. He did not use it for that purpose, but applied it to his own use. He attempted to deceive the defendant at the very outset of his employment. The proof is abundant upon this question, and the fact is conceded. The defendant thereupon rescinded the contract as it had a right to do, and demanded the return of the $50; and thereafter the plaintiff, not in good faith, but undoubtedly in order to harass and annoy the plaintiff and possibly acquire the $200, prepared a blank form of trust deed and resolutions and sent them to the defendant, knowing, of course, that these papers could be of no use to it. He did not perform this part of the contract in good faith. He was discovered in his treachery before he had done anything, and all that he did was done after the contract had been rescinded. He was therefore not entitled to recover.

The judgment is reversed, and the cause remanded with

instructions to enter a judgment in favor of the defendant for $50 and costs.

DUNBAR, C. J., PARKER, FULLERTON, and GOSE, JJ., concur.